Nos. 22-2370, 22-2413

# In The United States Court of Appeals for The Seventh Circuit

MOTOROLA SOLUTIONS, INC. AND
MOTOROLA SOLUTIONS MALAYSIA SDN. BHD.,
*Plaintiffs-Appellees, Cross-Appellants,*

v.

HYTERA COMMUNICATIONS CORPORATION LTD.,
*Defendant-Appellant, Cross-Appellee.*

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 1:17-cv-01973
Honorable Charles R. Norgle Sr.

## CROSS-APPEAL REPLY BRIEF
## FOR PLAINTIFFS-APPELLEES, CROSS-APPELLANTS

Michael W. De Vries, P.C.
KIRKLAND & ELLIS LLP
555 South Flower Street, 3700
Los Angeles, CA 90071

Adam R. Alper, P.C.
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104

Leslie M. Schmidt, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022

John C. O'Quinn, P.C.
  *Counsel of Record*
Jason M. Wilcox, P.C.
Nicholas A. Aquart
Hanna Torline Bradley
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004

Steven J. Lindsay
KIRKLAND & ELLIS LLP
300 N. La Salle Dr.
Chicago, IL 60654

*Counsel for Plaintiffs-Appellees, Cross-Appellants*

June 21, 2023

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 4

I.      The District Court Erred by Denying Motorola a Permanent
        Injunction. ............................................................................................... 4

        A.      The District Court Erred in Concluding That Motorola Had an
                Adequate Remedy at Law. ......................................................... 4

        B.      The District Court's Denial of a Permanent Injunction Was
                Based Solely on Its Evaluation of Whether Motorola Had an
                Adequate Remedy at Law. ....................................................... 12

II.     If the Court Sets Aside the Award of Hytera's Illicit Profits, it Should
        Reverse the District Court's Order Vacating the Award of Motorola's
        Lost Profits and Hytera's Avoided Costs and Reinstate Those
        Damages. .............................................................................................. 17

III.    If the Court Reduces Motorola's Damages Award, it Should Remand
        for the District Court To Assess Whether Domestic Application of the
        ITSA Authorizes Recovery of Hytera's Extraterritorial Profits. ..................... 22

CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpern v. Lieb,*
 38 F.3d 933 (7th Cir. 1994) ................................................................ 24

*Avery v. State Farm Mut. Auto. Ins. Co.,*
 835 N.E.2d 801 (Ill. 2005) ................................................................ 22

*Books v. Chater,*
 91 F.3d 972 (7th Cir. 1996) ................................................................ 23

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,*
 90 F.3d 1264 (7th Cir. 1996) ............................................................ 10

*Cossel v. Miller,*
 229 F.3d 649 (7th Cir. 2000) ............................................................ 16

*DiLeo v. Ernst & Young,*
 901 F.2d 624 (7th Cir. 1990) ............................................................ 24

*eBay Inc. v. MercExchange, L.L.C.,*
 547 U.S. 388 (U.S. 2006) ............................................................ 12, 13

*Firestone Fin. Corp. v. Meyer,*
 796 F.3d 822 (7th Cir. 2015) ............................................................ 24

*LaSalle Bank Lake View v. Seguban,*
 54 F.3d 387 (7th Cir. 1995) ............................................................ 24

*Life Spine, Inc. v. Aegis Spine, Inc.,*
 8 F.4th 531 (7th Cir. 2021) ............................................................ 20

*McMahon v. LVNV Funding LLC,*
 807 F.3d 872 (7th Cir. 2015) ............................................................ 14

*McRoberts Software, Inc. v. Media 100, Inc.,*
 329 F.3d 557 (7th Cir. 2003) ........................................................ 19, 21

*Members v. Paige,*
 140 F.3d 699 (7th Cir. 1998) ............................................................ 25

*Mondrow v. Fountain House,*
 867 F.2d 798 (3d Cir. 1989) ............................................................ 11

*Motorola Sols. Inc. v. Hytera Commc'ns Corp. Ltd.*,
U.K. Court of Appeal (Civil Division), 2021 WL 00077130, Official
Tr. (Jan. 11, 2021) ................................................................ 5

*Neimi v. Lasshofer*,
770 F.3d 1331 (10th Cir. 2014) ............................................ 7

*Newman-Green, Inc. v. Alfonzo-Larrain R.*,
854 F.2d 916 (7th Cir. 1988) ............................................... 15

*Pasquino v. Prather*,
13 F.3d 1049 (7th Cir. 1994) ............................................... 24

*Reed v. Columbia St. Mary's Hosp.*,
915 F.3d 473 (7th Cir. 2019) ............................................... 12

*Roland Mach. Co. v. Dresser Indus., Inc.*,
749 F.2d 380 (7th Cir. 1984) ...................................... 5, 7, 21

*In re Sentinel Mgmt. Group, Inc.*,
728 F.3d 660 (7th Cir. 2013) ............................................... 15

*In re Shell Oil Co.*,
966 F.2d 1130 (7th Cir. 1992) ......................................... 23, 24

*Sims v. Lucas*,
9 F.3d 1293 (7th Cir. 1993) ................................................. 24

*United States v. Gomez*,
24 F.3d 924 (7th Cir. 1994) ................................................. 24

*Vaughn v. Walthall*,
968 F.3d 814 (7th Cir. 2020) ............................................... 15

*W. States Ins. Co. v. Wis. Wholesale Tire, Inc.*,
148 F.3d 756 (7th Cir. 1998) ............................................... 24

*WesternGeco LLC v. ION Geophysical Corp.*,
138 S. Ct. 2129 (2018) ........................................................ 22

*Wis. Mut. Ins. Co. v. United States*,
441 F.3d 502 (7th Cir. 2006) ............................................... 11

**Statutes**

18 U.S.C. § 1836 ........................................... 14, 15, 16, 17, 18

Pub. L. No. 114–153, 130 Stat. 376 (2016) .................................................. 20

765 ILCS 1065/4......................................................................................... 22

**Rules**

Fed. R. App. P. 10 ....................................................................................... 10

Fed. R. Civ. P. 52 ........................................................................................ 23

Fed. R. Civ. P. 60 .................................................................................. 10, 11

7th Cir. R. 50................................................................................................ 23, 24

# GLOSSARY

| Short Form | Description |
|---|---|
| A | Hytera's Main Appendix |
| SA | Hytera's Separate Appendix |
| MA | Motorola's Main Appendix |
| MSA | Motorola's Separate Appendix |
| MRA | Motorola's Reply Appendix |
| R. | Record number in the district court (PACER) |
| Dkt. | Appellate Court Docket |
| Hytera.Br. | Hytera's Opening Brief |
| Motorola.Br. | Motorola's Joint Opening & Response Brief |
| Hytera.Resp.Br. | Hytera's Joint Response & Reply Brief |

## INTRODUCTION

In responding to Motorola's cross-appeal, Hytera seeks to distract from its own conduct as a criminally indicted trade-secret misappropriator, its failure to pay or even post a bond for the past-damages award, and its contemptable refusal to escrow the overwhelming majority of the ongoing royalty ordered by the district court in lieu of an injunction.  Because Hytera cannot defend the indefensible, it instead conjures waivers that do not exist, ignores findings that the jury necessarily made (but the district court disregarded), and touts the minuscule escrow payments it has now made—all the while continuing to make use of Motorola's valuable trade secrets. Along the way, Hytera attempts to downplay admissions from its own executives about its intent to evade any U.S. judgment based on differences in evidentiary standards in U.K. as opposed to U.S. courts, but actions speak louder than words.

Hytera has made clear it will do everything it possibly can to thwart payment of any meaningful judgment, which is exactly why Motorola was and is entitled to a permanent injunction.  And although Motorola is entitled to the district court's damages award (notwithstanding Hytera's fact-intensive challenges to that award), the *jury's* award would have entitled Motorola to even more, from the combination of Motorola's lost profits and Hytera's avoided-cost windfall.  Motorola's cross-appeal thus provides an independent basis for a meaningful damages award (as well as justly awarded punitive damages for uniquely egregious conduct).

*First*, Hytera makes no real effort to defend the district court's erroneous analysis of the irreparable harm to Motorola, which overlooked the overwhelming evidence that Hytera simply would not pay a royalty for its future use of Motorola's

trade secrets. Instead, Hytera relies on a clear misreading of an inapposite portion of the district court's injunction order in an attempt to turn this Court's attention away from the irreparable-harm issue. When it comes to the evidence demonstrating its unwillingness to pay, Hytera manages only to quibble with its CFO's unambiguous threat to "retreat" to China and other "murky" jurisdictions in light of any "unacceptable" verdict, while pointing to dubious off-shore "collateral" that it has offered (but not posted) in contravention of the district court's royalty order. In all events, Hytera's misconduct during discovery, at trial, and after the jury's verdict all evince the same message: Hytera will do everything in its power to avoid being held to account for its theft. That includes taking pains to avoid paying the royalty ordered here. Because such an uncollectable royalty cannot adequately compensate Motorola for the ongoing harm presented by Hytera's future use, the district court abused its discretion both when denying Motorola a permanent injunction and again in denying Motorola's motion for reconsideration.

*Second*, whether this Court considers—let alone credits—any of Hytera's forfeited and flawed theories of apportionment, Hytera provides no evidence or argument contradicting the district court's express finding that Motorola's lost profits amounted to $86.2 million. The factual finding of $86.2 million in lost profits was necessary to the jury's verdict, and the district court acknowledged as much, even though it proceeded to erroneously award Motorola *only* Hytera's unjust profits rather than *both* Motorola's lost profits and Hytera's avoided development costs. But the lost-profits finding, combined with Hytera's undisputed $73.6 million in avoided

costs—totaling $159.8 million—together support *even more* than Hytera's unjust profits attributable to its misappropriation ($135.8 million). Motorola has conditionally cross-appealed the denial of that correct, alternative award to which it was entitled under the Defend Trade Secrets Act ("DTSA")—no part of which is susceptible to Hytera's forfeited and fact-dependent apportionment challenges. That corrected award thus provides an independent, alternative basis for (at a minimum) retaining the district court's DTSA award.

*Third*, were the Court to vacate and remand any of the damages award for any reason, Hytera provides no basis to avoid a remand on the issue of Motorola's potential damages under the Illinois Trade Secrets Act ("ITSA"), which Motorola also conditionally cross-appealed. There is no disputing that the district court not only ignored Motorola's principal ITSA argument below, but that in so doing it failed to consider that all the trade secrets originated from Illinois and were downloaded from Motorola's primary servers in Illinois. Regardless of the scope of the Copyright Act or the DTSA, Illinois *state* law protects against such thievery of Illinois trade secrets, and it should have been for the *jury* to decide whether Motorola had *factually* proven Hytera's predicate acts. At a minimum, however, a district court's resolution of a substantive motion must allow for meaningful appellate review and the district court's ITSA decision falls far short of doing that here—addressing only part of the relevant state-law inquiry. That alone provides a sufficient basis for vacating the district court's ITSA ruling, should the Court reach the issue.

# ARGUMENT

## I.    The District Court Erred by Denying Motorola a Permanent Injunction.

The district court denied Motorola a permanent injunction against Hytera's future use of Motorola's trade secrets because the court thought Motorola had an adequate remedy at law. That holding is deeply flawed in light of the record compiled below and should be reversed. Apparently recognizing the weakness of the district court's reasoning, Hytera attempts to manufacture an alternative basis for the district court's decision grounded in an "exceptional circumstances" exception that supposedly trumps the traditional *eBay* factors. No such exception exists and the exceptional circumstances Hytera identifies are the same public-interest factors the district court expressly rejected. Hytera cannot refuse to pay the judgment, refuse to pay the lion's share of its ongoing royalty obligations, and yet avoid an injunction against future misappropriation. The district court erred by concluding otherwise.

### A.    The District Court Erred in Concluding That Motorola Had an Adequate Remedy at Law.

The district court erred when it concluded that Motorola had failed to prove irreparable harm in the absence of an injunction. As Motorola argued in both its motion for a permanent injunction and its motion for reconsideration, *see* R.961, 1239, 1241, Motorola's harm cannot be remedied by monetary damages because Hytera is either unwilling or unable to pay a future royalty.

Hytera does not dispute that an uncollectable monetary remedy is an inadequate one—and with good reason. *See* Hytera.Resp.Br.67-70. "A damages remedy [is] inadequate [if] … [d]amages [are] unobtainable from the defendant."

*Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Instead, Hytera contends only that Motorola did not provide sufficient evidence below showing Hytera's unwillingness (or inability) to pay. *See* Hytera.Resp.Br.67. To the contrary, Motorola presented ample evidence of Hytera's financial recalcitrance, and the district court erred in holding that a royalty award would nonetheless remedy Motorola's ongoing harm.

In its permanent-injunction motion, Motorola pointed to three kinds of evidence showing that, absent an injunction, it had no adequate remedy at law for future harm because it would be unable to collect any monetary award from Hytera. *First*, Motorola emphasized that Hytera's CFO had threatened, during settlement meetings held in the United States, that the company would "retreat to China" if the outcome of Motorola's lawsuit were "unacceptable," and, moreover, that Hytera would undercapitalize subsidiaries in certain countries and move cash and assets to "China, Russia, and Africa" specifically because Motorola would have a hard time "collecting in those places." R.977-5, Ex.12 ¶¶27, 38.

It makes no difference that an appellate court in the United Kingdom found those statements inadmissible. Hytera.Resp.Br.1-2. Those statements are part of the record here, and the U.K. court's admissibility concerns do not apply in U.S. proceedings. Generally, in U.K. proceedings, any statements covered by the without-prejudice privilege, even damning statements by a company's senior executives, are not admissible unless they establish "unambiguous impropriety." *See Motorola Sols. Inc. v. Hytera Commc'ns Corp. Ltd.*, U.K. Court of Appeal (Civil Division), 2021 WL

00077130, Official Tr., at 1 (Jan. 11, 2021).  Under that standard, "even in a case where the 'improper' interpretation of what was said … is possible, or even probable, that is not sufficient to satisfy the demanding test that there is no ambiguity."  *Id.* at 6.  That exacting "unambiguous impropriety" test has no place in the U.S. law of evidence.  And the statements by Hytera's CFO leave no doubt Hytera has no intention of honoring judgments issued by American courts.

*Second*, Motorola proffered evidence that Hytera had *already* begun to implement that threatened retreat when the district court considered Motorola's motion.  Hytera moved assets around to make them more difficult for Motorola to collect, just as Hytera's CFO had forewarned.  For example, when Hytera's two U.S.-based entities declared bankruptcy, *see* R.974-75, Motorola received less than 3% of the total damages award, *see In re Hytera Commc'ns Am. (W.), Inc. et al.*, Case No. 8:20-bk-11507-ES, Doc.No.775 at 2, 4 (Bankr. C.D. Cal.); *id.*, Doc.No.786 at 7.  Those bankruptcies did not stop Hytera from selling infringing products in the United States; the company simply formed a *new* U.S. entity (conveniently, not a party to this lawsuit, and therefore not an entity from which Motorola can collect damages) to continue to sell the infringing products.  *See* A146-47.

*Third*, Motorola presented evidence that Hytera neither posted a bond nor voluntarily paid any amount of the existing damages award.  *See* R.996 at 4.  Although Hytera argues that it did not need to post a bond because it did not move the court to stay the judgment, *see* Hytera.Resp.Br.67-68, Hytera ignores that it failed *both* to post a bond *and* to pay the judgment when Motorola tried to collect.  That

6

dual failure demonstrates that Hytera provided no "assurance" of payment to Motorola who, thus far, has been unable to "collect[] on the judgment." *Neimi v. Lasshofer*, 770 F.3d 1331, 1343 (10th Cir. 2014).

Thus, when ruling on the injunction motion, the district court knew full well the extent of Hytera's bad-faith efforts to avoid satisfying the judgment. That is presumably why the court imposed "transfer restrictions … while Hytera's assets are discovered and the Court determines whether such assets are subject to turnover." R.1172 at 19, 22. The possibility that Hytera was "transfer[ring]" or "conceal[ing]" its assets was no secret to the district court. *Id.*

All that evidence of Motorola's inability to collect a royalty amount from Hytera required the district court to conclude that Motorola lacked an adequate remedy at law. Indeed, the evidence presented in Motorola's motion for a permanent injunction leaves no doubt that Hytera would not pay—for whatever reason (either inability or unwillingness). The court therefore erred in concluding that Motorola had an adequate remedy at law, *see Roland Mach. Co.*, 749 F.2d at 386, and, for the same reason, erred in denying Motorola's motion for a permanent injunction.

Moreover, Hytera's conduct since the district court denied the injunction and ordered Hytera to pay a royalty has only confirmed Motorola's fears. To begin, Hytera has paid none of the roughly $50 million royalty payment that was due to Motorola on July 31, 2022. *See* Motorola.Br.66; A152 §5.5; R.1352 at 1-2; R.1386 at 4-5 & n.5; *see also* R.1241 at 1 (noting in Motorola's motion for reconsideration that Hytera had "not paid a single cent of this Court's judgment, though it ha[d] been subject to

enforcement for over a year").  Hytera admits even now that it has not put cash into escrow to cover that first royalty payment but claims that it has offered another form of security—shares in a private Canadian company (allegedly appraised at $4 million more than the amount it owes for that first payment).  *See* Hytera.Resp.Br.69.  But the district court has not approved that alternative security; it instead ordered Hytera to deposit roughly $50 million *in cash* in escrow, and Hytera agreed to—and now fails to honor—that term.  *See* R.1309 §§4, 5.2, 5.6.

Hytera's offer of Canadian stock is just its latest attempt to side-step its financial obligations.  And it brings only the coldest of comforts to Motorola given that the proposed stock payment has never been approved by the district court—and therefore has not been fully scrutinized through adversarial testing.  *See* R.1369, 1361 at 7-10.  Hytera has not even allowed Motorola to verify the purported value of the stock, and under Hytera's (unapproved) terms, Hytera would retain control of the stock value once posted and could freely dissipate its worth.  *See* R.1369, Ex.1 ¶¶28-29.  Additionally, Hytera provides no guarantee that Motorola could efficiently dispose of the stock in order to fully recognize what it is owed.  The stock valuation Hytera relies on, in any event, expired at the end of 2022 and by its terms is no longer reliable.  *See* R.1352, Ex.10 at 20.  Motorola has also never "touted these shares as a valuable asset" that could be used to cover Hytera's royalty payments. Hytera.Resp.Br.69.  Rather, in the motion that Hytera cites, Motorola simply moved the court to order Hytera to turn over various assets to satisfy the monetary judgment.  *See* R.1286 at 14.  Motorola has never represented that it would be willing

to accept stock shares instead of periodic cash royalty payments. Instead, it has consistently opposed Hytera's motion to modify the royalty order. *See* R.1359, 1360, 1369, 1384, 1385, 1397.

Hytera also attempts to paper-over its evasiveness by pointing out that it has paid its quarterly royalty payments into escrow. Those paltry amounts (less than $1 million each) are a fraction of the damages that Hytera has yet to pay. *See* Motorola.Br.26. On Hytera's telling, the small amounts are appropriate because sales of the infringing products have dwindled as Hytera has transitioned to using non-infringing technology. *See* Hytera.Resp.Br.68-69. But Motorola and Hytera continue to dispute what are and are not "infringing products," and Hytera has given this Court no reason to believe that its small quarterly payments thus far come anywhere close to compensating for the harm Motorola suffers each day without an injunction against Hytera's future use—let alone that those payments show Hytera's willingness to pay *much larger sums* that Motorola is entitled to under the royalty obligations the district court imposed. And given Hytera's unscrupulous conduct thus far—including concealing its theft from the outset and fabricating research-and-development data during the litigation, *see* Motorola.Br.9-10, 33—there is no reason to credit Hytera's unsupported assertions that its "redesigned" DMR technology no longer uses the intellectual property that Hytera stole from Motorola.

Beyond its general failure to satisfy its royalty obligations, Hytera has also thwarted collection of the judgment through its continued efforts to obstruct discovery into its assets. In fact, Motorola has every reason to think that even now Hytera is

9

concealing over $100 million in assets.  Hytera disclosed to the district court in 2021 that it had less than $40 million cash in its bank accounts.  *See* R.1241 at 5.  Yet, according to its contemporaneous public financials, Hytera had more than $168 million in cash or cash-equivalent assets as of its August 2021 financial report.  *Id.* at 5-6.  The disparity between Hytera's disclosures to the district court and its public financial statements strongly suggests that Hytera is intentionally concealing assets from the court, and thereby obstructing satisfaction of the very judgment that would be necessary to provide Motorola an adequate remedy at law.  Moreover, before turning over any evidence into the movement of its assets, Hytera has insisted that it first screen *every single document* for compliance with Chinese law.  *See* R.1223 at 2-3; R.1241 at 6-7 & Ex.6.  And it has even flouted the asset-transfer restrictions imposed by the district court.  *See* R.1241, Ex.4.  Again, if Hytera genuinely intended to pay the reasonable royalties due to Motorola, it would have no reason to engage in this kind of persistent obfuscation.

This Court can appropriately consider both the evidence Motorola submitted with its original injunction request and the evidence it later submitted as part of its motion for reconsideration.  *See* R.1364 (Motorola's Notice of Cross-Appeal, in which Motorola expressly appealed the district court's denial of Motorola's motion for reconsideration, MA42-43); Fed. R. App. P. 10(a) (the record on appeal includes "the original papers and exhibits filed in the district court").  Given that one of the central purposes of a motion for reconsideration is "to present newly discovered evidence," *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir.

1996) (quotation omitted); *see* Fed. R. Civ. P. 60(b)(2), Motorola properly placed the post-denial evidence before the district court in its Rule 60(b) motion and is therefore perfectly entitled to invoke that evidence on appeal.

Although the district court dismissed Motorola's Rule 60(b) motion on procedural grounds, *see* Hytera.Resp.Br.70, it had no sound basis for doing so. The court believed that it lacked jurisdiction to consider the motion for reconsideration after Motorola filed a premature, protective cross-appeal of the initial denial of a permanent injunction in response to Hytera filing its own premature appeal. But because those appeals were premature, they did not divest the district court of jurisdiction over Motorola's motion for reconsideration, and the district court should have addressed Motorola's new evidence on the merits. *See, e.g.*, *Mondrow v. Fountain House*, 867 F.2d 798, 800 (3d Cir. 1989) ("Unlike a timely notice of appeal, a premature notice of appeal does not divest the district court of jurisdiction."); *see also Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 505 (7th Cir. 2006). Despite Hytera's representation that Motorola filed "the current [cross-]appeal … *before* filing its reconsideration motion," Hytera.Resp.Br.70 (emphasis added), Motorola filed its operative notice of cross-appeal here on August 5, 2022, *see* R.1364, 30 days *after* the district court denied its motion for reconsideration, *see* MA42-43. Thus, the evidence relevant to that motion was properly before the district court and is likewise properly before this Court.

Finally, although Hytera criticizes Motorola for allegedly arguing that Hytera is unable to pay the royalty, *see* Hytera.Resp.Br.67, Motorola simply repeated in its

opening brief Hytera's *own* representations that it lacked funds to pay the judgment—representations that Motorola called "dubious." Motorola.Br.27. In any event, it ultimately makes no difference whether Hytera is financially unable to pay the judgment or whether it is able but has simply chosen not to pay. Either way, Motorola lacks an adequate remedy at law and is therefore entitled to an injunction prohibiting Hytera's future use of Motorola's trade secrets. That Hytera has failed to pay (whether by choice or necessity) and will likely continue to do so proves that Motorola will never collect the full amount it is owed. That is all Motorola must show.

### B. The District Court's Denial of a Permanent Injunction Was Based Solely on Its Evaluation of Whether Motorola Had an Adequate Remedy at Law.

Hytera asks the Court to turn a blind eye to its inability (or unwillingness) to pay based on a contrived waiver argument that more accurately sounds in forfeiture, not waiver. *See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019). According to Hytera, Motorola forfeited any challenge to what Hytera claims was the district court's "dispositive ground" for denying a permanent injunction: "exceptional circumstances" implicating the public interest that made an injunction on Hytera's future use of Motorola's trade secrets inequitable. *See* Hytera.Resp.Br.63-64. Hytera is simply wrong. Even a cursory review of the district court's order below and the DTSA's statutory text readily shows that the district court did not deny an injunction based on a free-floating "exceptional circumstances" exception implicating the public interest that supplants the traditional *eBay* factors.

*First,* Hytera's argument misconstrues the district court's injunction order. In addressing whether to grant Motorola's motion for a permanent injunction on

Hytera's future use, the court applied the well-settled, four-factor test laid out in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (U.S. 2006). *See* MA36. Applying the *eBay* factors, the court found that *three* clearly favored a permanent injunction: "Motorola succeeded on the merits," and both the "balance of the hardships" and the "public interest" factors "strongly favor[ed]" an injunction on Hytera's future use. MA37-40. In the end, however, it found that Motorola would not be irreparably harmed absent the injunction because it had "an adequate remedy at law" (monetary relief) for Hytera's ongoing exploitation of Motorola's trade secrets. *See, e.g.*, MA38 ("In sum, the Court finds that Motorola could quantify its future losses and remedy them in a future suit, thus rendering a permanent injunction inequitable in this scenario."); *see also id.* ("[T]he nature of the harms suffered, and potentially to be suffered, by Motorola are compensable with damages."). Because Motorola has consistently contested the district court's dispositive irreparable-harm analysis, it has not forfeited a challenge to the court's denial of a permanent injunction on future use. *See* Motorola.Br.23-28.

Hytera disputes none of that. Rather, it incorrectly claims the district court denied an injunction for a second, independent reason: the negative impact an injunction would have on "innocent third parties" including "first responders" and "governmental entities" during the COVID-19 pandemic were "exceptional circumstances" that made an injunction inequitable. Hytera.Resp.Br.65. But when analyzing the *eBay* factors, the district court explicitly *rejected* that very public-interest rationale. *See* MA39-40 (refusing to credit Hytera's argument that an

injunction on future use would unduly harm "innocent third parties" including "first responders, hospitals, [and] airlines"). The court found that such concerns were outweighed by other considerations and that "the public interest is better served when intellectual property rights are protected and when infringers are held to account, no matter how widespread the stolen products become." *Id.* at 39.

Hytera grounds its argument in a different section of the district court's decision—the section addressing ongoing royalties. *See* MA40. The DTSA provides that, "in exceptional circumstances that render an injunction inequitable," a court may grant an injunction "that conditions future use of the trade secret upon payment of a reasonable royalty." 18 U.S.C. §1836(b)(3)(A)(iii). In applying that statutory provision, the district court identified two "exceptional circumstances." MA40. The first is the "extremely expensive, time-consuming, and difficult" process for "quantifying [Motorola's] losses." *Id.* The second is the "large potential problem" from "a worldwide injunction" during "an ongoing pandemic." *Id.* Hytera reads the second finding as a complete reversal of the district court's public-interest findings.

But Hytera's reading of the district court's order cannot be correct. On that interpretation, the district court would have seemingly found an injunction's effect on the public interest to be an exceptional circumstance that made an injunction inequitable, while simultaneously rejecting *the very same* public interest arguments under *eBay*. That would mean that the district court's opinion is internally contradictory—indeed, blatantly so. Such an "internally inconsistent" decision denying an injunction would be a *per se* abuse of discretion. *See McMahon v. LVNV*

14

*Funding LLC*, 807 F.3d 872, 875-76 (7th Cir. 2015); *In re Sentinel Mgmt. Group, Inc.*, 728 F.3d 660, 670 (7th Cir. 2013). Common sense and precedent instead dictate that the Court should read the district court's opinion to *not* create such a clear contradiction. *See, e.g.*, *Newman-Green, Inc. v. Alfonzo-Larrain R.*, 854 F.2d 916, 922 (7th Cir. 1988) (explaining that a reading of a judicial opinion is "preferable" when it would prevent the opinion from being "internally contradictory"), *rev'd on other grounds*, 490 U.S. 826 (1989).

*Second*, Hytera's reading of the district court's order is also implausible because it is premised on an erroneous understanding of the DTSA. According to Hytera, §1836(b)(3)(A)(iii) contains a "discretionary layer" that purportedly authorized the district court to deny Motorola a permanent injunction if it found that "exceptional circumstances" were present—regardless whether the four *eBay* factors themselves favored granting the injunction. *See* Hytera.Resp.Br.63-65. That interpretation of §1836(b)(3)(A)(iii) cannot be squared with the DTSA's text and structure.

As the district court recognized, the *eBay* factors alone govern whether an injunction on Hytera's future use is "inequitable" under the DTSA. *See* MA36; *see also, e.g.*, *Vaughn v. Walthall*, 968 F.3d 814, 824 (7th Cir. 2020) (emphasizing the *eBay* factors' controlling authority). Section 1836(b)(3)(A)(iii)'s reference to "exceptional circumstances" relates only to the (separate) question whether a reasonable royalty is appropriate in those "exceptional circumstances" where a court has already deemed "inequitable" a permanent injunction on future use under *eBay*.

15

The Uniform Trade Secrets Act ("UTSA"), which Hytera agrees "was a model for the DTSA at the federal level," Hytera.Resp.Br.66 n.22, reinforces that conclusion. It similarly provides that "in exceptional circumstances, an injunction may condition future use upon payment of a reasonable royalty[.]" UTSA §2(b). The commentary accompanying UTSA makes clear that "exceptional circumstances" include the factors set out in *eBay*, such as the balance of hardships and the "public interest." *Id.* §2(b) cmt. at 9. Only if the *eBay*-like factors themselves "require[] the denial of a prohibitory injunction against future damaging use" may a court then consider whether to impose a reasonable royalty in the alternative. *Id.* It should be no surprise that the DTSA operates similarly. That is why the district court referenced §1836(b)(3)(A)(iii) only in its discussion of whether to impose a "Reasonable Royalty." MA40.

Not even Hytera suggested below that §1836(b)(3)(A)(iii) superimposed an extra "discretionary layer" of exceptional-circumstance review to supplant the *eBay* factors. Quite the opposite. In its briefing before the district court, Hytera treated *eBay*'s four-factor test as controlling, *see* R.986 at 1-2, and aimed most of its artillery at the "public interest prong" of that test, *see* R.1084 at 1—arguments that the district court expressly rejected, *see* MA39-40.[1] Hytera had it right the first time; *eBay*'s comprehensive framework alone governs whether a district court may grant or deny

---

[1] Thus, it is Hytera, not Motorola, that has forfeited any "exceptional circumstances" argument on appeal. It is well-settled that a litigant may not "adopt[] a position on appeal that is contrary to its position in the district court," *Cossel v. Miller,* 229 F.3d 649, 653 (7th Cir. 2000), and Hytera's about-face regarding the controlling nature of the *eBay* test forecloses its late-breaking effort to retcon the district court's injunction order.

a permanent injunction against future use.  Accordingly, the district court's erroneous irreparable-harm analysis under *eBay* is all that matters here.

## II.    If the Court Sets Aside the Award of Hytera's Illicit Profits, it Should Reverse the District Court's Order Vacating the Award of Motorola's Lost Profits and Hytera's Avoided Costs and Reinstate Those Damages.

The Court should affirm the district court's $135.8 million DTSA damages award.  Those damages represent Hytera's profits from misappropriating Motorola's trade secrets, and the district court properly apportioned those profits to capture only the profits attributable to Hytera's unlawful acts.  But if the Court does not affirm, then pursuant to Motorola's conditional cross-appeal, *see* Motorola.Br.40-43, it should remand with instructions to award Motorola $159.8 million—the combination of $86.2 million in *Motorola's* lost profits and $73.6 million in Hytera's avoided costs. *See* A72 ¶¶9-10.  At the very least, this Court should remand for the district court to reconsider its improper vacatur of those two awards—neither of which are subject to apportionment.

The legal framework governing the alternative-damages number Motorola raises as part of its conditional cross-appeal is undisputed.  Hytera does not contest that Motorola's own lost profits and Hytera's avoided costs require no apportionment, so Hytera's apportionment challenges do not apply to those damages.  Nor does Hytera dispute that Motorola can recover *both* its lost profits *and* Hytera's avoided development costs.  *See* 18 U.S.C. § 1836(b)(3)(B)(i).  Rightly so.  Under the DTSA, Motorola is entitled to recover "damages for actual loss," *and* "damages for any unjust enrichment … that is not addressed in computing damages for actual loss."  *Id.*

Relatedly, Hytera neglects to challenge the findings below on its avoided costs and so concedes on appeal that it was unjustly enriched to the tune of at least $73.6 million. *See* A72 ¶¶9-10. Again, for good reason. That figure was supported by substantial evidence produced at trial. *See, e.g.*, MRA18:11-20:6, MSA601:10-603:8. Even the district court confirmed that much, notwithstanding its later error in vacating that damages award. *See* A72 ¶9; A82 ¶44; A83 ¶¶45-47 ("[T]he Court finds that the evidence supports $73.6 million for Hytera's avoided research and development costs for Hytera's trade secret misappropriation under the DTSA.").

As for lost profits, Hytera attempts to rewrite the trial record. According to Hytera, the jury never considered lost profits because Motorola told the jury to ignore the issue entirely. *Id.* at 28-30. But at trial, Motorola presented ample evidence of its lost profits. *See, e.g.*, MRA3:25-7:24, MRA8:14-13:20 (Dr. Malackowski detailing process for calculating "Motorola's lost profits" and citing various trial exhibits supporting his calculations). Even Hytera's own expert testimony confirms that Motorola argued "two theories of damages in this case, unjust enrichment *and lost profits*." MRA24:13-14 (emphasis added). To be sure, Motorola also argued to the jury that Hytera's unjust enrichment exceeded, and therefore "cover[ed]" Motorola's "lost profits," but that just meant Motorola was entitled to the greater of the two amounts under the DTSA. MRA28:24-25, MRA32:23-25 (unjust enrichment award is "on top of" lost-profits award); MRA17:16-19 (Dr. Malackowski noting that disgorgement damages are "appropriate" because they represent "the larger of the damage calculations"); *see also* 18 U.S.C. § 1836(b)(3)(B)(i). That is precisely what

18

the lost-profits instruction the district court provided told the jury to do.  *See* R.895 at 39; *see also McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 569 (7th Cir. 2003) (courts must presume that the jury follows its instructions).

Regardless, Hytera's argument ignores the district court's finding (consistent with the evidence presented to the jury) that Motorola indeed suffered "$86.2 million in … lost profits due to Hytera's trade secret misappropriation under the DTSA." A72 ¶10.  Hytera also fails to acknowledge that the district court's lost-profits finding was based on evidence and argument presented to the jury over the four-month-long trial. *Id.* (citing various trial testimony and exhibits).  Unsurprisingly, Hytera's record citations on appeal betray its argument that Motorola's lost-profits calculation came out of nowhere.  *See* Hytera.Resp.Br.30 (citing trial transcript discussing Motorola's lost-profits calculations that were presented and argued to both the jury and the district court).

Equally unavailing is Hytera's argument that the district court did not credit Motorola's lost-profits calculations.  *See* Hytera.Resp.Br.30.  While the district court initially mistook the jury's award of $135.8 million in DTSA damages as Motorola's lost profits, it later corrected that misunderstanding by clarifying that the $135.8 million figure represented Hytera's illicit profits and was not a proxy for Motorola's lost profits.  *See* A72 ¶12.  But in doing so, the district court did not find that Motorola had suffered no actual loss (which would have been absurd), or that Motorola's lost-profits calculations were flawed in any way.

19

Hytera is likewise wrong that the district court's DTSA damages award did not consider Motorola's actual loss. *See* Hytera.Resp.Br.29-30 (citing A72). Like the jury, the district court accounted for Motorola's actual loss but awarded the disgorgement damages figure because it "exceed[ed] Motorola's $86.2 million in Motorola's lost profits." A72 ¶10. The district court's labeling of Hytera's $135.8 million as disgorgement damages, rather than "the actual loss suffered by Motorola," *id.* ¶12, does not call into question that Motorola suffered lost profits or that those profits amounted to $86.2 million.

Hytera also suggests that Motorola's $86.2 million lost-profits figure contains "numerous flaws." Hytera.Resp.Br.30. But as Hytera admits, it did not argue below that the $86.2 million figure was calculated in error, *see* Hytera.Resp.Br.30 ("Hytera had no reason to challenge Motorola's calculation of lost profits in the post-trial motions"), and so it has forfeited such an argument on appeal, *see Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 544 (7th Cir. 2021). Regardless, Hytera's vaguely defined criticisms of Motorola's lost-profit figures do not withstand scrutiny.

*First*, in a passing footnote, Hytera intimates that the $86.2 million figure is inaccurate because it only concerns "lost profits … from May 2016 through June 2019, not the full damages period." Hytera.Resp.Br.29 n.13. But Motorola's calculation—that, again, the district court accepted—correctly covered Motorola's lost profits starting from the DTSA's effective date (May 11, 2016) through the district court's cut-off date for past judgment due (June 2019). *See* Pub. L. No. 114–153, 130 Stat. 376 (enacted May 11, 2016); *see also* R.1095 at 4 n.4; A72 ¶10. Hytera does

not even attempt to explain how Motorola's use of those natural starting and ending points cast any doubt whatsoever on the accuracy of Motorola's lost-profits calculations as they relate to recovery under the DTSA.

*Second*, Hytera cites (without any accompanying explanation) over twenty pages of testimony from one of its experts claiming that one of Motorola's experts erred in his lost-profits calculation at trial by misapplying the relevant market shares. *See* Hytera.Resp.Br.30 (citing R.926). But neither the jury nor the district court were required to credit Hytera's expert testimony. *See, e.g.*, R.895 at 15 ("The fact that [an expert] has given an opinion does not mean that you are required to accept it."). Moreover, the district court expressly accepted the market-share analysis proffered by Motorola and its experts. *Compare* R.1095 ¶10 n.4 (Motorola offering lost-profits number based on market share figures and analysis), *with* A72 ¶10 (district court accepting lost-profits figure based on Motorola's market share analysis). It is not Hytera's place—nor within this Court's purview—to second guess either credibility determination. *See, e.g.*, *Dresser Indus., Inc.,* 965 F.2d at 1446; *McRoberts Software, Inc.*, 329 F.3d at 564 ("As a reviewing court, we must be particularly careful to avoid supplanting [our] view of the credibility or the weight of evidence for that … of the [factfinder]." (internal citations omitted)).

At bottom, there is no reason to disturb the district court's $135.8 million DTSA damages award and thus no need to reach this conditional cross-appeal issue. Hytera forfeited its apportionment challenges and the district court's finding that Hytera's profits were due entirely to its theft of Motorola's trade secrets is amply supported by

the record compiled below. *See* A83 ¶49, A93 ¶92; *see also* Motorola.Br.6-10, 13-14, 32-38. If this Court nonetheless accepts Hytera's apportionment arguments, it should reinstate the damages award for the two categories of damages that award does not affect, which taken together justify another $24 million in damages above the $135.8 million the district court awarded. At a minimum, to the extent this Court vacates the damages award, it should make clear that the district court must also reconsider the decision vacating the lost profits and avoided costs awards.

## III.  If the Court Reduces Motorola's Damages Award, it Should Remand for the District Court To Assess Whether Domestic Application of the ITSA Authorizes Recovery of Hytera's Extraterritorial Profits.

Finally, the district court mistakenly held that Motorola is not entitled to Hytera's foreign profits under ITSA based on a truncated and incomplete analysis. *See* MA27-30. The court held ITSA does not apply extraterritorially, but never addressed Motorola's *lead argument* that this case "involve[d] a domestic application" of ITSA because "[t]he relevant conduct, i.e., Hytera's theft and copying, occurred in United States territory, and specifically [Illinois]." R.774 at 8 (citing *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018), and *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005)). In support of that lead argument, Motorola argued that ITSA provided for damages against any "misappropriation," *id.* at 8-9 (citing 765 ILCS 1065/4); that the trade secrets Hytera stole were acquired when its employees downloaded them from U.S. servers; and, importantly for ITSA purposes, that the main U.S. server—which all other U.S. servers mirror—was located in Illinois, *see* MSA522:3-11; *see also* MSA556:17-21, 559:8-20. Only

alternatively did Motorola argue that ITSA applied extraterritorially.  *See* R.774 at 12-15.

Hytera makes no effort to defend the district court's ITSA reasoning (or lack thereof).  Instead, it invokes Federal Rule of Civil Procedure 52(a)(3) to make the head-scratching argument that Motorola needed to not only appeal the district court's failure to consider its argument, but also challenge a hypothetical decision rejecting its domestic-application argument on the merits.  *See* Hytera.Resp.Br.52-54.

But Hytera's myopic focus on Rule 52(a)(3) ignores this Court's own Circuit Rule 50, which required the district court to express clearly its reasons for rejecting Motorola's ITSA argument.  Circuit Rule 50 provides, in relevant part: "Whenever a district court resolves any claim or counterclaim on the merits … the judge shall give his or her reasons, either orally on the record or by written statement."  7th Cir. R. 50.  Thus, even though Rule 52(a)(3) does not itself require district courts to specially find facts or state conclusions of law when issuing motion-to-dismiss and summary-judgment rulings, Circuit Rule 50 "was designed to close th[ose] gaps in the Rules of Civil Procedure, so that every dispositive order would be explained—for the benefit of the parties (who should not have to wonder why a judge acted) as well as this court."  *In re Shell Oil Co.*, 966 F.2d 1130, 1132 (7th Cir. 1992).

Here, "Circuit Rule 50's sweeping language expressly encompasses the decision below" because the district court resolved Motorola's ITSA claim on the merits when it held as a matter of law that Motorola could not recover damages occurring outside of Illinois.  *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996); *see*

*also Pasquino v. Prather*, 13 F.3d 1049, 1051 (7th Cir. 1994). And the district court's resolution of that claim failed to include the kind of "clear explication" of reasoning required by Circuit Rule 50. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995). Again, Circuit Rule 50 exists "to assure the parties that the court has considered the important arguments" and "to enable a reviewing court to know the reasons for the judgment." *DiLeo v. Ernst & Young,* 901 F.2d 624, 626 (7th Cir. 1990); *see also W. States Ins. Co. v. Wis. Wholesale Tire, Inc.*, 148 F.3d 756, 758 (7th Cir. 1998) (per curiam). But the district court's perfunctory ITSA discussion—which ignored the very kind of "domestic application" argument that it credited with respect to the DTSA, *see* MA23-25—provides Motorola no assurance that the Court considered its lead ITSA argument, nor does it allow this Court to meaningfully review that decision. "Neither the parties nor a reviewing court should be compelled to guess at the reasons for a decision"—and guessing is all one can do in the face of the district court's opinion here. *See Shell Oil Co.*, 966 F.2d at 1132; *see also United States v. Gomez*, 24 F.3d 924, 929–30 (7th Cir. 1994).

When faced with an "ambiguity" caused by a violation of Circuit Rule 50, this Court typically "remand[s] the case to the district court for clarification of its reasoning." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 828 (7th Cir. 2015); *see also Alpern v. Lieb*, 38 F.3d 933, 936 (7th Cir. 1994); *Sims v. Lucas*, 9 F.3d 1293, 1294 (7th Cir. 1993) (per curiam). Indeed, when a district court judge similarly failed to explain why he "reached contradictory conclusions," and where such a rationale was not

24

discernable from the record, the Court has remanded for further proceedings. *Members v. Paige*, 140 F.3d 699, 701 (7th Cir. 1998).  It should do the same here.

Because the district court's written opinion falls well short of permitting meaningful appellate review, it flunks Circuit Rule 50.  The district court should therefore be required to re-do its ITSA analysis if this Court reduces the Copyright Act or DTSA damage awards.  There is, however, no need to re-do that analysis, and Motorola's conditional cross-appeal is moot, if the Court affirms those awards.  *See* Motorola.Br.54.

## CONCLUSION

This Court should reverse the district court's denial of a permanent injunction, and, if it remands on the issue of damages, order the district court to correct the DTSA and ITSA damages in Motorola's favor, or, at a minimum, to reconsider those issues on remand.

Respectfully submitted,

June 21, 2023                          *s/* John C. O'Quinn, P.C.

                                      John C. O'Quinn, P.C.
                                       *Counsel of Record*
                                      Jason M. Wilcox, P.C
                                      Nicholas A. Aquart
                                      Hanna Torline Bradley
                                      KIRKLAND & ELLIS LLP
                                      1301 Pennsylvania Avenue N.W.
                                      Washington, DC 20004
                                      (202) 389-5000
                                      john.oquinn@kirkland.com

                                      Michael W. De Vries, P.C.
                                      KIRKLAND & ELLIS LLP
                                      555 South Flower Street
                                      Suite 3700
                                      Los Angeles, CA 90071
                                      (213) 680-8400

                                      Adam R. Alper, P.C.
                                      KIRKLAND & ELLIS LLP
                                      555 California Street
                                      27th Floor
                                      San Francisco, CA 94104
                                      (415) 439-1400

                                      Leslie M. Schmidt, P.C.
                                      KIRKLAND & ELLIS LLP
                                      601 Lexington Ave.
                                      New York, NY 10022
                                      (212) 446-4763

                                      Steven J. Lindsay
                                      KIRKLAND & ELLIS LLP
                                      300 N. La Salle Dr.
                                      Chicago, IL 60654

                                      *Counsel for Plaintiffs-Appellees,*
                                      *Cross-Appellants*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

1.      This brief complies with the type-volume limitation of Circuit Rule 28.1 because, according to the "word count" function of Microsoft Word 2016, it contains 6,603 words, excluding the parts of the brief exempted from the word count by Federal Rule of Appellate Procedure 32(f).

2.      This brief, which has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Century Schoolbook font, complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) as modified by Circuit Rule 32(b).


June 21, 2023

*s/* John C. O'Quinn, P.C.
John C. O'Quinn, P.C.

### CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30(d)

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by

Circuit Rule 30(a) and (b) are included in the appendices submitted with this brief.

<u>s/ John C. O'Quinn, P.C.</u>
John C. O'Quinn, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2023, a copy of the foregoing brief and required short appendix was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

_s/_ John C. O'Quinn, P.C.
John C. O'Quinn, P.C.

Nos. 22-2370, 22-2413

# In The United States Court of Appeals for The Seventh Circuit

MOTOROLA SOLUTIONS, INC. AND
MOTOROLA SOLUTIONS MALAYSIA SDN. BHD.,
*Plaintiffs-Appellees, Cross-Appellants,*

v.

HYTERA COMMUNICATIONS CORPORATION LTD.,
*Defendant-Appellant, Cross-Appellee.*

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 1:17-cv-01973
Honorable Charles R. Norgle Sr.

## REPLY APPENDIX
## FOR PLAINTIFFS-APPELLEES, CROSS-APPELLANTS

Michael W. De Vries, P.C.
KIRKLAND & ELLIS LLP
555 South Flower Street, 3700
Los Angeles, CA 90071

Adam R. Alper, P.C.
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104

Leslie M. Schmidt, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022

John C. O'Quinn, P.C.
  *Counsel of Record*
Jason M. Wilcox, P.C.
Nicholas A. Aquart
Hanna Torline Bradley
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004

Steven J. Lindsay
KIRKLAND & ELLIS LLP
300 N. La Salle Dr.
Chicago, IL 60654

*Counsel for Plaintiffs-Appellees, Cross-Appellants*

June 21, 2023

# MOTOROLA'S REPLY APPENDIX
## TABLE OF CONTENTS

**DOCUMENT** ...................................................................................................**PAGE**

Trial Transcript  Excerpts Volume 13B (pgs. 2179-2183, 2200-2205)
December 2, 2019 (R.794)......................................................................MRA1

    Direct Examination of James Malackowski (Motorola Witness) ..................MRA3


Trial Transript Excerpts Volume 14A (pgs. 2214, 2256-2258)
December 3, 2019 (R.795) .....................................................................MRA15

    Direct Examination of James Malackowski (Motorola Witness) ...............MRA17


Trial Transcript Excerpts Volume 32A (pg. 4818)
February 3, 2020 (R.926) ......................................................................MRA22

    Direct Examination of Debra Aron (Hytera Witness) ...............................MRA24


Trial Transcript Excerpts Volume 37B (pg. 5706)
Febrauary 12, 2020 (R.931) ...................................................................MRA26

    Closing Statement by A. Alper (Motorola) .................................................MRA28


Trial Transcript Excerpts Volume 38B (pg. 5920)
February 13, 2020 (R.932) .....................................................................MRA30

    Final Statement by A. Alper (Motorola)  .....................................................MRA32

1          IN THE UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   MOTOROLA SOLUTIONS, INC., and MOTOROLA   ) No. 17 CV 1973
    SOLUTIONS MALAYSIA SDN. BHD,             )
4                                            )
                                             )
            Plaintiffs,                      )
5   vs.                                      ) Chicago, Illinois
                                             )
6   HYTERA COMMUNICATIONS CORPORATION, LTD., ) December 2nd, 2019
    HYTERA AMERICA, INC., and HYTERA         )
7   COMMUNICATIONS AMERICA (WEST), INC.,     )
                                             )
8            Defendants.                     ) 1:22 o'clock p.m.

9                   TRIAL - VOLUME 13-B
                 TRANSCRIPT OF PROCEEDINGS
10
          BEFORE THE HONORABLE CHARLES R. NORGLE, SR.,
11                      and a jury

12  APPEARANCES:

13  For the Plaintiffs:    KIRKLAND & ELLIS, LLP
                           BY:  MR. ADAM R. ALPER
14                              MR. BRANDON HUGH BROWN
                           555 California Street
15                         Suite 2700
                           San Francisco, California 94104
16                         (415) 439-1400

17                         KIRKLAND & ELLIS, LLP
                           BY:  MR. MICHAEL W. DE VRIES
18                              MR. CHRISTOPHER M. LAWLESS
                           333 South Hope Street
19                         Suite 2900
                           Los Angeles, California 90071
20                         (213) 680-8400

21

22  Court Reporter:        AMY M. SPEE, CSR, RPR, CRR
                           Official Court Reporter
23                         United States District Court
                           219 South Dearborn Street, Room 1728
24                         Chicago, Illinois  60604
                           Telephone:  (312) 818-6531
25                         amy_spee@ilnd.uscourts.gov


**MRA1**

```
 1   APPEARANCES (Continued:)

 2   For the Plaintiffs:      KIRKLAND & ELLIS, LLP
                              BY:  MS. MEGAN MARGARET NEW
 3                            300 North LaSalle Street
                              Chicago, Illinois 60654
 4                            (312) 862-7439

 5                            KIRKLAND & ELLIS, LLP
                              BY:  MS. LESLIE M. SCHMIDT
 6                            601 Lexington Avenue
                              New York, New York 10022
 7                            (212) 446-4763

 8   For the Defendants:      STEPTOE & JOHNSON, LLP
                              BY:   MR. BOYD T. CLOERN
 9                                  MR. MICHAEL J. ALLAN
                                    MS. JESSICA ILANA ROTHSCHILD
10                                  MS. KASSANDRA MICHELE OFFICER
                              1330 Connecticut Avenue NW
11                            Washington, DC 20036
                              (202) 429-6230
12
                              STEPTOE & JOHNSON, LLP
13                            BY:  MR. DANIEL S. STRINGFIELD
                              227 West Monroe Street
14                            Suite 4700
                              Chicago, Illinois 60606
15                            (312) 577-1300

16

17   ALSO PRESENT:            MR. RUSS LUND and
                              MS. MICHELE NING
18

19

20

21

22

23

24

25
```

**MRA2**

1  get to the quantification portion.

2          THE COURT:  Well, you are ready to get there.

3          MS. SCHMIDT:  I am.

4  BY MS. SCHMIDT:

5  Q   And so before we get to the quantification, Mr. Malackowski,

6  do you have a board that can help guide that analysis?

7  A   I do.

8          MS SCHMIDT:  All right.  Your Honor, may I approach the

9  board --

10          THE COURT:  Yes.

11          MS SCHMIDT:  -- and display it?

12          THE COURT:  Yes.

13  BY MS. SCHMIDT:

14  Q   All right.  So, Mr. Malackowski, we're looking at PDX 11 --

15  or 110.

16          Could you please explain what we're looking at on the

17  board?

18  A   Yes.  In many ways this is the bottom line of what are the

19  potential measures of damage if the jury finds trade secret

20  misappropriation and/or copyright infringement.

21          And there are three measures shown on the board, two

22  measures of trade secret misappropriation depending upon which

23  method is selected and one measure of copyright infringement

24  damage if the copyrights are found to infringe.

25  Q   And so, Mr. Malackowski, when we're talking about unjust

**MRA3**

1 enrichment and lost profits, what types of damages are those,

2 just at a high level?

3 A   At a very high level, it's actually pretty simple.  Unjust

4 enrichment represents the profits that Hytera made or the costs

5 they saved by the theft of the intellectual property.  And lost

6 profits, as the name implies, represents the harm that Motorola

7 directly incurred as a result of the theft.

8 Q   And now, Mr. Malackowski, although punitive damages are at

9 issue in this case, are you offering an opinion on that?

10 A   No.  These damages are what's known as compensatory damages.

11 To the extent that punitive damages are awarded by the jury, that

12 would be added to the compensatory damages.

13 Q   And now you gave a brief explanation of unjust enrichment and

14 lost profits.  But could we look at some of your demonstratives

15 to talk about that a little bit more?

16 A   Sure.

17       MS. SCHMIDT:  All right.  Mr. Schlaifer, could we please

18 get PDX 10.15.

19 BY MS. SCHMIDT:

20 Q   And so, Mr. Malackowski, what are we illustrating here?

21 A   We're using some of the examples that I would use when I

22 teach these concepts.

23       And I tend to use these almost cartoonish examples to

24 make two points:  One is to explain method, but two, to emphasize

25 that this is actually pretty simple from a methodology point.

1   It's really common sense.  I want to hammer that home through

2   simple illustrations.

3        So we start with a company.  This happens to be A&B

4   Cookies.  They have three employees.  And they make delicious

5   chocolate chip cookies with their recipe.

6   Q   Okay.  And what kind of recipe is it?

7   A   It turns out it's a secret recipe, trade secret recipe in my

8   example.

9        MS. SCHMIDT:  All right.  And if we could go to PDX

10  10.16, please, Mr. Schlaifer.

11  BY MS. SCHMIDT:

12  Q   So what's happening here?

13  A   So the hypothetical that we set up is one of the employees

14  leaves, and they go to another cookie stand and they sell

15  competing cookies.  And so what can we learn from that that we

16  can apply to the much more complicated calculations of this case?

17  Q   Sure.  And so in this example, who is losing the profits?

18  A   So again, it's very simple, A&B is losing profits.  So any

19  damage related to them would be measured by lost profits.

20  Q   And who is being unjustly enriched in this example?

21  A   In this case it would be Cookies R Us.  So the numbers with

22  respect to Cookies R Us that we are discussing are their benefit

23  or their gain, which comes in the form of the profits they make

24  by selling cookies too as well as we'll see in the cost they

25  saved.

**MRA5**

1  Q   And now other than the profits that are made, are there other

2  ways that Cookies R Us in this example was unjustly enriched by

3  the misappropriation?

4  A   Yes.  As the next slide shows, it's because they saved the

5  research costs.  So on the left side of the chart we have Ann and

6  Beth who are buying product, experimenting, developing their

7  secret recipe.

8          On the right side of the chart we have the employee who

9  left who took it with him.

10         And, importantly, the simple concept is they didn't have

11 to incur those costs.  And so those costs are actually an unjust

12 enrichment element in addition to the profits from the sales.

13 Q   And now, Mr. Malackowski, turning back to your board, how do

14 the different types of damages that you've calculated fit

15 together?

16 A   So it's important that they are selectively chosen to not

17 double count, to not overcompensate Motorola.

18         So if trade secret misappropriation is found, either the

19 jury would award the Hytera unjust enrichment or the Motorola

20 lost profits.  But they would not add them together if all of the

21 trade secrets were misappropriated.

22         If all of the trade secrets are misappropriated, then

23 the copyright damages would be included, so they would not be

24 added either.  You would just pick one number.

25         In the event that only copyright damages were found,

**MRA6**

1  then it would be the lower number on the bottom.

2  Q   And now, Mr. Malackowski, you mentioned no double counting,

3  which is the last item on that slide.

4       And if we could go to PDX 10.18, could you explain how

5  your analysis addressed the issue of double counting?

6  A   Yes.  This is another very simple illustration, but I think

7  it makes the point.

8       So let's assume in our hypothetical that there are trade

9  secrets related to the design of the whole house.  But there are

10 also trade secrets related to each of the rooms and even trade

11 secrets related to the lamp, the microwave and the refrigerator.

12      Well, if you find that everything is misappropriated,

13 and you take the profits from the entire house, you wouldn't add

14 more profits for a room or separately profits for the

15 refrigerator.

16      Likewise, if you found that the living room was

17 misappropriated and the kitchen was misappropriated, you would

18 add those two together, but you wouldn't again add a sofa and a

19 microwave.  You only take the broadest measure of actual harm.

20 And I was careful to do that in my work.

21 Q   And so, Mr. --

22      THE COURT:  Does that mean the whole versus the sum of

23 the parts?

24      THE WITNESS:  In a way it's exactly right, Your Honor.

25 BY MS. SCHMIDT:

**MRA7**

1  you stopped and look to the end of the row.  You don't need to go

2  any further.

3           If the first trade secret you found and the only one you

4  found was in the 48 months, then you would use the 179 million.

5  Q   And now, Mr. Malackowski, if we go to PDX 10.32, what is your

6  conclusion as to the amount of unjust enrichment damages for

7  Hytera's misappropriation of Motorola's trade secrets?

8  A   It's as shown on the large board.  It's the total of the

9  unjust enrichment profits plus the unjust enrichment R&D cost

10 savings.  And so the bottom line, bottom line is $311,859,953.

11 So that's the most important number.

12 Q   And now looking at your board, which is PDX 110, what is the

13 next category of damages that you calculated?

14 A   I also considered Motorola's lost profits, which are the

15 profit they would have earned had the misappropriation not

16 occurred.

17 Q   All right.  Mr. Malackowski, could you please turn to PTX

18 2067, 2068 and 2069.  And once you're there, if you could please

19 tell us what those documents are.

20 A   Yes.  These are my calculations, my summaries attached to my

21 report that represent the Motorola lost profits.

22 Q   And what information from Hytera did you rely on in those

23 summaries?

24 A   This information relates to Motorola's accounting records and

25 Hytera's unit sales to get the actual calculation.

**MRA8**

1  Q   And now with respect to the Hytera unit information that you

2  relied on, have we talked about that already?

3  A   Yes.  That's the same units we've shown and talked about at

4  some length.

5  Q   And now with respect to the Motorola information, what

6  Motorola financial information did you rely on?

7  A   The Motorola accounting records for the DMR products,

8  specifically the mid-tier and high-tier radios over the same time

9  period.

10 Q   And where did that Motorola financial information come from?

11 A   Well, it came from Motorola generally.  More specifically it

12 resides on their Oracle database system and is maintained in the

13 ordinary course of business.

14 Q   And now did you also rely on other Motorola information

15 related to its market share in these summaries?

16 A   Ultimately, yes.  The reason these numbers are different than

17 unjust enrichment relates to market share.  And I looked to the

18 Motorola internal documents that track that information.

19 Q   Okay.  How did Motorola store those documents that you relied

20 on?

21 A   They also store them within a database.  They're produced on

22 a routine basis, and they're part of their normal business

23 records.

24 Q   And all of the information that you relied on in PTX 2067,

25 2068 and 2069, has it been made available to Hytera?

**MRA9**

1  A   It's been made available to their attorneys and their

2  experts.

3  Q   And would it be more convenient to look at these exhibits

4  instead of the underlying documents?

5  A   Much more so.

6          MS SCHMIDT:  Your Honor, we move the admission of PTX

7  2067, PTX 2068 and PTX 2069.

8          THE COURT:  They are received and may be published.

9              (Said exhibits were received in evidence.)

10 BY MS. SCHMIDT:

11 Q   And now so, Mr. Malackowski, let's look at at a high level

12 your calculation for lost profits.  If we go to PDX 10.33.

13         Could you please walk us through the steps that you

14 took?

15 A   Yes.  This is also pretty straightforward, but it has two

16 more steps than we've seen before.  So first I start with the

17 number of Hytera accused units.  So that's the data we've seen.

18         Second though I multiply that by Motorola's market

19 share, recognizing that Motorola might not sell every one of the

20 units themselves.

21         Once I know the units that Motorola would sell, I

22 multiply it by Motorola's price, what is called the average

23 revenue per unit, ARPU.  And then once you know the revenue, you

24 multiply it by a profit margin to get the total.

25 Q   And so, Mr. Malackowski, I want to focus on the market share

**MRA10**

1  portion.  Why didn't you give Motorola credit for all of Hytera's

2  sales?

3  A   This is actually the unit -- the topic I spent as much time

4  on as R&D, because I was trying to reconcile what I saw in the

5  testimony versus what I saw in the business records.

6          And in the testimony I saw a two-party market, a

7  one-to-one correlation high market share.  But in Motorola's

8  records I saw lower figures.  So in order to be conservative, I

9  decided to use the lower figures for calculating my lost profits

10 numbers.

11 Q   And if we go to PDX 10.34, is this some of the testimony that

12 you reviewed in performing your market share analysis?

13 A   It is.  This is just a small section of the video we heard

14 right before I came to testify.  It's Mr. Yuan.  And he was asked

15 by the end of 2018:

16          "Do you have any knowledge of the respective market

17 shares in the DMR market in the US?"

18          Answer:  "I think apart from Hytera and Motorola, if we

19 put everybody together in the DMR market, I think their DMR

20 market share would be less than 10 percent."

21          Meaning Motorola and Hytera had 90 percent or more of

22 the sales.

23          He's asking if that would be true --

24          THE COURT:  Is that in the United States?

25          THE WITNESS:  This is in the United States, Your Honor.

1                THE COURT:  That's what he said?

2                THE WITNESS:  That's what he said.

3                THE COURT:  Proceed.

4   BY MS. SCHMIDT:

5   Q   Mr. Malackowski, did you use 90 percent for your market share

6   figure?

7   A   I considered it, but I ultimately did not.  I used a lower

8   percentage to be conservative.

9   Q   If we go to PDX 10.35, could you please explain what market

10  share percentage you did use?

11  A   Yes.  So this chart, if you look to the top of the light red

12  or pink bars, it's the same chart we saw before, the total Hytera

13  sales worldwide by year.

14               What I show in the solid dark red is the portion of the

15  sales that I actually included in my lost profits calculation.

16  And obviously it's substantially less.  It's not 90 percent.

17  It's approximately 50 percent.

18               But this way I was able to account for potential third

19  parties or even the fact that some customers just might not buy

20  from Motorola at all.

21  Q   And, Mr. Malackowski, in --

22               THE COURT:  Just a second.

23               Or they might not buy from anyone?

24               THE WITNESS:  Exactly, Your Honor, they might not buy

25  from anyone.

**MRA12**

1          THE COURT:  Proceed.

2    BY MS. SCHMIDT:

3    Q   Mr. Malackowski, in doing this analysis, did you also

4    consider the channels through which Motorola and Hytera sell

5    their products, for example, through dealers and distributors?

6    A   I did.  And they sell through substantially similar channels,

7    largely through distributors, but also direct sales, the one

8    distinction being that Motorola dealers are exclusive, they only

9    sell Motorola products, where Hytera dealers may sell other

10   products.

11   Q   And now, Mr. Malackowski, using the calculation that we

12   looked at on PDX 10.33, what amount of lost profits did you

13   arrive at?

14   A   So if you --

15   Q   And you can look at your report.

16   A   Yeah.  So if you crank through all the numbers looking by

17   year for mid-tier and high-tier, looking at the difference in

18   price for the United States versus outside the United States and

19   go through all the products, the total lost profits figure is

20   $153.9 million.

21          And the reason it's so much less than the 311 largely is

22   because of, one, that market share adjustment and, two, because

23   the prices were slightly different, three, the profits were

24   slightly different.

25   Q   And now with respect to the unjust enrichment that you

1                          * * * * * * *

2                      C E R T I F I C A T E

3          We, Amy Spee and Jennifer Costales, do hereby certify

4   that the foregoing is a complete, true, and accurate transcript

5   of the proceedings had in the above-entitled case before the

6   Honorable CHARLES R. NORGLE, SR., one of the judges of said

7   court, at Chicago, Illinois, on December 2nd, 2019.

8   /s/*Amy Spee, Official Court Reporter*__      December 3rd, 2019

9   /s/*Jennifer Costales, Contract Court Reporter* December 3rd, 2019

10  United States District Court

11  Northern District of Illinois

12  Eastern Division

13

14

15

16

17

18

19

20

21

22

23

24

25

**MRA14**

1    IN THE UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3   MOTOROLA SOLUTIONS, INC., and MOTOROLA    ) No. 17 CV 1973
    SOLUTIONS MALAYSIA SDN. BHD,              )
4                                             )
                                              )
5            Plaintiffs,                      )
    vs.                                       ) Chicago, Illinois
                                              )
6   HYTERA COMMUNICATIONS CORPORATION, LTD.,  ) December 3, 2019
    HYTERA AMERICA, INC., and HYTERA          )
7   COMMUNICATIONS AMERICA (WEST), INC.,      )
                                              )
8            Defendants.                      ) 10:15 o'clock a.m.

9
                    TRIAL - VOLUME 14 A
10               TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE  CHARLES R. NORGLE, SR.
11                     and a jury

12

13  For the Plaintiffs:    KIRKLAND & ELLIS LLP
                           BY:  Mr. Adam R. Alper
14                              Mr. Brandon Hugh Brown
                                Mr. Reza Dokhanchy
15                              Ms. Barbara Nora Barath
                                Mr. Kyle Calhoun
16                         555 California Street
                           27th Floor
17                         San Francisco, California 94104
                           (415) 439-1400
18
                           KIRKLAND & ELLIS LLP
19                         BY:  Mr. Michael W. De Vries
                           333 South Hope Street
20                         Los Angeles, California 90071
                           (213) 680-8400
21

22
    Court reporter:            BLANCA I. LARA
23                         Official Court Reporter
                           219 South Dearborn Street
24                             Room 2342
                           Chicago, Illinois 60604
25                           (312) 435-5895
                           blanca_lara@ilnd.uscourts.gov

1  Appearances:  (Continued:)

2

3  For the Plaintiffs:     KIRKLAND & ELLIS LLP
                           BY: Ms. Megan Margaret New
4                          300 North LaSalle Street
                           Chicago, Illinois 60654
                           (312) 862-7439
5

6                          KIRKLAND & ELLIS LLP
                           BY:  Ms. Leslie M. Schmidt
7                          601 Lexington Avenue
                           New York, New York 10022
                           (212) 446-4763
8

9  Motorola Corporate Representative:   Mr. Russ Lund

10

11  For the Defendants:    STEPTOE & JOHNSON LLP
                            BY: Mr. Boyd T Cloern
12                              Mr. Michael J. Allan
                                Ms. Jessica Ilana Rothschild
13                              Ms. Kassandra Michele Officer
                           1330 Connecticut Avenue., Nw
14                         Washington, DC 20036
                           (202) 429-6230

15                         STEPTOE & JOHNSON LLP
                           BY:  Mr. Daniel Steven Stringfield
16                         227 West Monroe Street
                           Suite 4700
17                         Chicago, Illinois 60606
                           (312) 577-1267
18

19  Hytera Corporate Representative:  Michele Ning

20

21

22

23

24

25

**MRA16**

1  Q.  And so since there are no such limitations, did you have to

2  adjust your market share calculation to take that into

3  account?

4  A.  There was no need for such an adjustment.

10:19:37    5  Q.  And now turning to PDX 110, which is your board.

6        Now, does your calculation of lost profits take into

7  account all of Hytera's unjust enrichment from its

8  misappropriation?

9  A.  I'm not sure I understand that question.  The lost profits

10:19:57  10  relate to the same units.  These are updated through the last

11  set of information in June of this year.  Same units, but it's

12  a distinct calculation, so you would not award both.

13  Q.  And so why is it, though, in your opinion that you would

14  award -- or why is it your opinion that Hytera's unjust

10:20:14  15  enrichment is the appropriate amount of damages in this case?

16  A.  As I explained yesterday, Motorola is entitled to the full

17  recovery, and therefore the larger of the damage calculations

18  are most appropriate, in my opinion.  And so they would be

19  entitled to the 311 million.

10:20:29  20  Q.  And so, Mr. Malackowski, now let's turn to your opinion on

21  the amount of copyright damages.

22        MS. SCHMIDT:  And, Mr. Schlaifer, could we please go

23  to PDX 10.37.

24  BY MS. SCHMIDT:

10:20:42  25  Q.  And so, Mr. Malackowski, what geographic area did you

**MRA17**

1    the foundation for the admissibility of the document, but not
2    this witnesses.
3    BY MR. STRINGFIELD:
4    Q.  Mr. Malackowski, my question was, is there any amount of
5    research and development expenditure that you would allow
6    Hytera to deduct in this case?
7    A.  Well, it's case by case.  So if the records show through
8    the normal-course documents and the testimony of the witnesses
9    under oath expenses that should be deducted, then I would
10   certainly consider those.  And I did consider them at the time.
11   Q.  So, Mr. Malackowski, it's not your position that research
12   and development expenses may never be deducted when you're
13   determining profit margin, is that right?
14   A.  Correct.  That is not my position.
15   Q.  Mr. Malackowski, I want to talk about another aspect of
16   your unjust enrichment opinions, and that's the research and
17   development savings.
18           And we were discussing that a little bit earlier.  And
19   that's based on research and development expense that you
20   believe it would've -- Hytera would've been required to invest
21   to get the 21 trade secrets at issue in this case?
22   A.  The amount of money they saved by the theft of the trade
23   secrets.
24           MR. STRINGFIELD:  Mr. Montgomery, can you please put
25   up PDX 1023.


**MRA18**

BY MR. STRINGFIELD:

Q.  Mr. Malackowski, we talked about this slide yesterday, right?

A.  I don't remember if you and I talked about it, but I certainly did.

Q.  Mr. Malackowski, I listened to you talk about this slide yesterday, is that right?

A.  I expect you did.

Q.  So, Mr. Malackowski, and again, I think your position is that if Hytera's research and development expenditures were acceptable to you, you would let them deduct the investment that they had made already in DMR research and development, is that right?

A.  If they incurred specific expenses that could be verified, I would consider R&D as well, yes.

Q.  As a deductible expense to determine the profit margin for the accused DMR radios and the DMR repeaters?

A.  Yes.

Q.  Okay.  But yet, whatever amount it was, wasn't sufficient because you say that they have to spend another $73.6 million here?

A.  Well, I'm saying they saved 73.6 million because of the theft.

Q.  Well, I think you told us that Hytera could've developed the 21 trade secrets at issue in this case by spending

1    $73.7 million, right?

2    A.  Well, that's a slightly different point.  I calculate the

3    amount they saved, that would assume that they had the same

4    level of efficiency as Motorola, which I understand from Dr.

11:12:55    5    Rangan is not the case.  So this is a conservative measure of

6    what they would've had to spend.

7    Q.  So you assume the same level of efficiency.  You're also

8    assuming the same level of labor rate as Motorola?

9    A.  In China, yes.  Specific to China.

11:13:12    10    Q.  And you're aware that Hytera produced its own labor rate

11    data in this case?

12    A.  I did.  I mentioned that I've looked at that data and it

13    varies in unexplainable ways on a year-by-year, hour-by-person

14    basis.

11:13:25    15    Q.  And you considered Hytera's labor rate in your earlier

16    reports, is that right?

17    A.  I did.  For example, I saw a secretary at $5 an hour, and I

18    see an engineer at less than that, and then two years later I

19    see huge differences.

11:13:38    20    Q.  And, Mr. Malackowski, you did not apply Hytera's labor rate

21    when you were calculating how much it would've cost Hytera in

22    research and development settings, right?

23    A.  No.  The Hytera R&D data is all -- "messed up" is not a

24    technical term, but it is not reliable.  I looked at it every

11:13:59    25    which way I could and I did not find it reliable for these

**MRA20**

1                    C E R T I F I C A T E

2           I, Judith A. Walsh, do hereby certify that the

3    foregoing is a complete, true, and accurate transcript of the

4    proceedings had in the above-entitled case before the

5    Honorable CHARLES R. NORGLE, SR., one of the judges of said

6    Court, at Chicago, Illinois, on December 3, 2019.

7

8    _/s/ Judith A. Walsh, CSR, RDR, F/CRR_____ December 4, 2019

9    Official Court Reporter

10   United States District Court

11   Northern District of Illinois

12   Eastern Division

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
2                           EASTERN DIVISION

3   MOTOROLA SOLUTIONS, INC., and MOTOROLA    ) No. 17 CV 1973
    SOLUTIONS MALAYSIA SDN. BHD,              )
4                                             )
                Plaintiffs,                   )
5   vs.                                       ) Chicago, Illinois
                                              )
6   HYTERA COMMUNICATIONS CORPORATION, LTD.,  ) February 3, 2020
    HYTERA AMERICA, INC., and HYTERA          )
7   COMMUNICATIONS AMERICA (WEST), INC.,      )
                                              )
8               Defendants.                   ) 9:55 a.m.

9                        TRIAL - VOLUME 32-A
                      TRANSCRIPT OF PROCEEDINGS
10
               BEFORE THE HONORABLE CHARLES R. NORGLE, SR.
11                            and a jury

12  APPEARANCES:

13  For the Plaintiffs:    KIRKLAND & ELLIS, LLP
                           BY:  MR. ADAM R. ALPER
14                              MR. AKSHAY DEORAS
                                MR. BRANDON HUGH BROWN
15                         555 California Street
                           Suite 2700
16                         San Francisco, California 94104
                           (415) 439-1400
17
                           KIRKLAND & ELLIS, LLP
18                         BY:  MR. MICHAEL W. DE VRIES
                                MR. CHRISTOPHER M. LAWLESS
19                         333 South Hope Street
                           Suite 2900
20                         Los Angeles, California 90071
                           (213) 680-8400
21

22
    Court Reporter:        JENNIFER COSTALES, CRR, RMR
23                         Official Court Reporter
                           219 South Dearborn Street, Room 2342
24                         Chicago, Illinois 60604
                           (312) 435-5895
25                         jenny.uscra@yahoo.com
```

**MRA22**

```
 1   APPEARANCES:  (Continued)

 2   For the Plaintiffs:     KIRKLAND & ELLIS, LLP
                             BY:  MS. MEGAN MARGARET NEW
 3                           300 North LaSalle Street
                             Chicago, Illinois 60654
 4                           (312) 862-7439

 5                           KIRKLAND & ELLIS, LLP
                             BY:  MS. LESLIE M. SCHMIDT
 6                           601 Lexington Avenue
                             New York, New York 10022
 7                           (212) 446-4763

 8   For the Defendants:     STEPTOE & JOHNSON, LLP
                             BY:  MR. BOYD T. CLOERN
 9                                MR. SCOTT M. RICHEY

10                                MR. MICHAEL J. ALLAN
                                  MS. JESSICA ILANA ROTHSCHILD
11                                MS. KASSANDRA MICHELE OFFICER
                             1330 Connecticut Avenue NW
12                           Washington, DC 20036
                             (202) 429-6230
13
                             STEPTOE & JOHNSON, LLP
14                           BY:  MR. DANIEL S. STRINGFIELD
                             227 West Monroe Street
15                           Suite 4700
                             Chicago, Illinois 60606
16                           (312) 577-1300

17

18   ALSO PRESENT:           MR. RUSS LUND and
                             MS. MICHELE NING
19

20

21

22

23

24

25
```

**MRA23**

1    allocate their resources and time among the many competing

2    demands and how all of those things interact to create prices

3    and outputs in a market.

4    Q.   And what do those topics have to do with the issues in

5    this case?

6    A.   Well, there are a number of issues in dispute in this case

7    that require economic expertise.  And those include disputes

8    about what would happen if Hytera were to enter the production

9    of DMR products later than they actually did and how that

10   would affect consumer behavior and competition and also the

11   question of which products compete with each other and, in

12   particular, which products compete with DMR radios.

13         Motorola has propounded two theories of damages in

14   this case, unjust enrichment and lost profits, and both of

15   those require understanding the issues that I just mentioned.

16   Q.   Could you briefly describe your educational background?

17   A.   Yes.  I have a Bachelor's Degree in Economics from UCLA

18   with honors and a Ph.D. in Economics from the University of

19   Chicago.

20   Q.   Do you have any teaching experience?

21   A.   I do.  My first job after graduate school --

22         THE COURT:  Just a minute.  You went from a BA to a

23   Ph.D.?

24         THE WITNESS:  I did.

25         THE COURT:  What did you do in the interim?

00:20:27
00:20:47
00:21:11
00:21:30
00:21:40

**MRA24**

0

```
 1                  C E R T I F I C A T E

 2

 3         We do hereby certify that the foregoing is a

 4   complete, true, and accurate transcript of the proceedings had

 5   in the above-entitled case before the Honorable CHARLES R.

 6   NORGLE, one of the judges of said Court, at Chicago, Illinois,

 7   on February 3, 2020.

 8

 9                           /s/ Jennifer Costales, CRR, RMR

10                           /s/ Amy Spee, RPR, CRR

11                           Official Court Reporters

12                           United States District Court

13                           Northern District of Illinois

14                           Eastern Division

15

16

17

18

19

20

21

22

23

24

25
```

01:35:44

**MRA25**

1          IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
2                   EASTERN DIVISION

3   MOTOROLA SOLUTIONS, INC., and MOTOROLA    ) No. 17 CV 1973
    SOLUTIONS MALAYSIA SDN. BHD,              )
4                                             )
              Plaintiffs,                     )
5   vs.                                       ) Chicago, Illinois
                                              )
6   HYTERA COMMUNICATIONS CORPORATION, LTD.,  ) February 12, 2020
    HYTERA AMERICA, INC., and HYTERA          )
7   COMMUNICATIONS AMERICA (WEST), INC.,      )
                                              )
8              Defendants.                    ) 1:00 p.m.

9                  TRIAL - VOLUME 37-B
              TRANSCRIPT OF PROCEEDINGS
10
           BEFORE THE HONORABLE CHARLES R. NORGLE, SR.
11                      and a jury

12  APPEARANCES:

13  For the Plaintiffs:    KIRKLAND & ELLIS, LLP
                           BY:  MR. ADAM R. ALPER
14                              MR. AKSHAY DEORAS
                                MR. BRANDON HUGH BROWN
15                         555 California Street
                           Suite 2700
16                         San Francisco, California 94104
                           (415) 439-1400
17
                           KIRKLAND & ELLIS, LLP
18                         BY:  MR. MICHAEL W. DE VRIES
                                MR. CHRISTOPHER M. LAWLESS
19                         333 South Hope Street
                           Suite 2900
20                         Los Angeles, California 90071
                           (213) 680-8400
21

22
    Court Reporter:        JENNIFER COSTALES, CRR, RMR
23                         Official Court Reporter
                           219 South Dearborn Street, Room 2342
24                         Chicago, Illinois 60604
                           (312) 435-5895
25                         jenny.uscra@yahoo.com

**MRA26**

```
 1  APPEARANCES:   (Continued)

 2  For the Plaintiffs:    KIRKLAND & ELLIS, LLP
                           BY:  MS. MEGAN MARGARET NEW
 3                         300 North LaSalle Street
                           Chicago, Illinois 60654
 4                         (312) 862-7439

 5                         KIRKLAND & ELLIS, LLP
                           BY:  MS. LESLIE M. SCHMIDT
 6                         601 Lexington Avenue
                           New York, New York 10022
 7                         (212) 446-4763

 8  For the Defendants:    STEPTOE & JOHNSON, LLP
                           BY:   MR. BOYD T. CLOERN
 9                               MR. SCOTT M. RICHEY
                                 MR. MICHAEL J. ALLAN
10                               MS. JESSICA ILANA ROTHSCHILD
                                 MS. KASSANDRA MICHELE OFFICER
11                               MR. BILL TOTH
                           1330 Connecticut Avenue NW
12                         Washington, DC 20036
                           (202) 429-6230
13
                           STEPTOE & JOHNSON, LLP
14                         BY:   MR. DANIEL S. STRINGFIELD
                           227 West Monroe Street
15                         Suite 4700
                           Chicago, Illinois 60606
16                         (312) 577-1300

17

18  ALSO PRESENT:          MR. RUSS LUND and
                           MS. MICHELE NING
19

20

21

22

23

24

25
```

**MRA27**

1    give you the framework.  There are two forms of compensatory

2    damages that you are going to be, two primary forms you are

3    going to be instructed on.  There is what is called unjust

4    enrichment and actual loss or lost profits.

02:02:10    5    Unjust enrichment, that's the benefit that Hytera

6    received from the misappropriation and from the copy for

7    copyright.

8    All right.  And how do we measure that?  We measure

9    it in a number of ways.  We are going to talk about this.  One

02:02:24    10    of the ways is the revenue that Hytera -- its profits from

11    selling the products with Motorola's code for all those years,

12    and the other way is the research and development that it was

13    able to skip by having perpetrated the theft.

14    The other form of damages is what I said was actual

02:02:42    15    loss or lost profits.  That's what Motorola lost in sales

16    because Hytera was selling products with Motorola's

17    confidential information in them against Motorola and taking

18    those sales away.

19    Now, here is the good news.  If you award Motorola

02:02:57    20    all of the unjust enrichment that it's entitled to, then you

21    don't have to worry about actual loss or lost profits.  It

22    goes down to what Mr. Malackowski was saying.  We're not

23    looking for double counting.  We don't want you to double

24    count.  So the unjust enrichment, it covers the lost profits.

02:03:13    25    And so for the remainder of my remarks, I am going to focus on

**MRA28**

1          In any event, can we go back to the six months.

2          I'm good with that.  Let's drop it.  Let's take out

3     the line of code analysis, because the line of code analysis

4     as Andy Grimmett testified is the only reason that's 15

04:25:58     5     months.  It uniformly causes longer delays.

6          This backs up to about there, and there is no real

7     market delay if you don't use the line of code analysis.

8     Either way, the six-month delay is very conservative.  And

9     taking out the line of code analysis actually just means even

04:26:22    10     fewer damages for Motorola for criticizing something that they

11     even do.  They publish papers on.  Six-month delay.

12          All right.  Let's talk about Hytera's knowledge for a

13     minute.  Why does it matter?  Motorola has to show that Hytera

14     knew or should have known about the alleged misappropriation.

04:26:44    15     That's right in the statute.

16          THE COURT:  All right.  This might be a good stopping

17     point for today.  It's roughly 4:30.

18          You can pick that up tomorrow morning, counsel.

19          Jurors, you are excused until tomorrow at 10:00 a.m.

04:26:56    20     (Adjournment 4:27 p.m. until 10:00 a.m., February 13,

21     2020)

22                    C E R T I F I C A T E
       I, Jennifer S. Costales, do hereby certify that the
23     foregoing is a complete, true, and accurate transcript of the
       proceedings had in the above-entitled case before the
24     Honorable CHARLES R. NORGLE, one of the judges of said Court,
       at Chicago, Illinois, on February 12, 2020.

25                              /s/ Jennifer Costales, CRR, RMR


**MRA29**

<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   MOTOROLA SOLUTIONS, INC., and MOTOROLA    ) No. 17 CV 1973
     SOLUTIONS MALAYSIA SDN. BHD,              )
 4                                             )
                  Plaintiffs,                  )
 5   vs.                                       ) Chicago, Illinois
                                               )
 6   HYTERA COMMUNICATIONS CORPORATION, LTD.,  ) February 13, 2020
     HYTERA AMERICA, INC., and HYTERA          )
 7   COMMUNICATIONS AMERICA (WEST), INC.,      )
                                               )
 8               Defendants.                   ) 1:17 p.m.

 9                   TRIAL - VOLUME 38-B
                  TRANSCRIPT OF PROCEEDINGS
10
           BEFORE THE HONORABLE CHARLES R. NORGLE, SR.
11                         and a jury

12   APPEARANCES:

13   For the Plaintiffs:   KIRKLAND & ELLIS, LLP
                           BY:  MR. ADAM R. ALPER
14                              MR. AKSHAY DEORAS
                                MR. BRANDON HUGH BROWN
15                           555 California Street
                             Suite 2700
16                           San Francisco, California 94104
                             (415) 439-1400
17
                           KIRKLAND & ELLIS, LLP
18                         BY:  MR. MICHAEL W. DE VRIES
                                MR. CHRISTOPHER M. LAWLESS
19                           333 South Hope Street
                             Suite 2900
20                           Los Angeles, California 90071
                             (213) 680-8400
21

22
     Court Reporter:       JENNIFER COSTALES, CRR, RMR
23                         Official Court Reporter
                           219 South Dearborn Street, Room 2342
24                         Chicago, Illinois 60604
                           (312) 435-5895
25                         jenny.uscra@yahoo.com
</pre>

**MRA30**

1    APPEARANCES:   (Continued)

2    For the Plaintiffs:    KIRKLAND & ELLIS, LLP
                            BY:  MS. MEGAN MARGARET NEW
3                           300 North LaSalle Street
                            Chicago, Illinois 60654
4                           (312) 862-7439

5                           KIRKLAND & ELLIS, LLP
                            BY:  MS. LESLIE M. SCHMIDT
6                           601 Lexington Avenue
                            New York, New York 10022
7                           (212) 446-4763

8    For the Defendants:    STEPTOE & JOHNSON, LLP
                            BY:   MR. BOYD T. CLOERN
9                                 MR. SCOTT M. RICHEY
                                  MR. MICHAEL J. ALLAN
10                                MS. JESSICA ILANA ROTHSCHILD
                                  MS. KASSANDRA MICHELE OFFICER
11                                MR. BILL TOTH
                            1330 Connecticut Avenue NW
12                          Washington, DC 20036
                            (202) 429-6230
13
                            STEPTOE & JOHNSON, LLP
14                          BY:  MR. DANIEL S. STRINGFIELD
                            227 West Monroe Street
15                          Suite 4700
                            Chicago, Illinois 60606
16                          (312) 577-1300

17

18   ALSO PRESENT:          MR. RUSS LUND and
                            MS. MICHELE NING
19

20

21

22

23

24

25

**MRA31**

03:25:16

1   world that never happened, Hytera could have developed a

2   product according to them six months, we disagree.  And

3   because they could have developed a product, they get to keep

4   all of the damages and revenues and profits that they actually

5   made from selling Motorola's trade secrets.

6           That is absolutely not right.  That is definitely not

7   right.  All it would do, if that was -- it's not the law.  I

8   am going to show you that in a minute.  But if that was the

9   right result, all it would do is encourage companies like

03:25:37

10  Hytera to just do it over and over again.  But here is the

11  thing, because they'd just do it again and potentially keep

12  all of what they stole.

13          So here is this.  Here is -- but, as His Honor will

14  instruct you, it's not the law.  This is the jury instruction

03:25:56

15  on unjust enrichment.  It's the applicable instruction here.

16  It's six lines long.  You will not see a single thing about

17  head start.  You will not see a single thing about deducting

18  based on what Hytera could have developed.

19          All you will see is that unjust enrichment is the

03:26:16

20  amount Hytera benefited as the result of any misappropriation.

21  And the only other thing that it says is that to the extent it

22  exceeds Motorola's actual loss, and what that means is that,

23  as I said yesterday, if you award lost profits to Motorola,

24  then the unjust enrichment is on top of that, no double

03:26:39

25  counting.

**MRA32**

5958

1        THE COURT:  Not necessarily all of you.

2        But court is adjourned until 10:00 o'clock.  I also

3   have other matters to deal with tomorrow.  But I will

4   certainly be in chambers for the entirety of the day.  Thank

04:34:38   5   you.

6        MR. ALPER:  Thank you, Your Honor.

7        MR. CLOERN:  Thank you, Your Honor.

8        (Adjournment 4:35 p.m. until 10:00 a.m., February 14,

9        2020)

10

11              C E R T I F I C A T E

12        I, Jennifer S. Costales, do hereby certify that the

13   foregoing is a complete, true, and accurate transcript of the

14   proceedings had in the above-entitled case before the

15   Honorable CHARLES R. NORGLE, one of the judges of said Court,

16   at Chicago, Illinois, on February 13, 2020.

17

18                     */s/ Jennifer Costales, CRR, RMR*

19                     Official Court Reporter

20                     United States District Court

21                     Northern District of Illinois

22                     Eastern Division

23

24

25

**MRA33**

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2023, a copy of the foregoing reply appendix was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

_s/_ John C. O'Quinn, P.C.
John C. O'Quinn, P.C.
